UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 2:13-cr-0021-JMS-CMM |
| | ) | |
| WILLIAM BELL & | ) | -01 |
| LENARD DIXON, | ) | -02 |
|     *Defendants.* | ) | |

## **ORDER**

Presently pending before the Court are the Government's Motions for Security Measures for Defendants William Bell and Lenard Dixon. [Filing No. 47; Filing No. 62.] The Government asks that both Defendants wear modified leg irons at the upcoming jury trial because of their violent institutional histories while incarcerated, violent criminal histories, and the pending criminal charges stemming from the alleged murder of a fellow inmate. [Filing No. 47; Filing No. 62.] The Government requests that if the Defendants are shackled with modified leg irons, ameliorative precautions be taken so the jury will be unaware of the restraints. [Filing No. 47 at 4.] The Court held a hearing on the pending motions on May 28, 2014, and took the motions under advisement. For the following reasons, the Court now **GRANTS** the Government's motions as to both Defendants. [Filing No. 47; Filing No. 62.]

### I.
#### APPLICABLE LAW

The United States Constitution "forbids the use of visible shackles during . . . the guilt phase, unless that use is justified by an essential state interest—such as the interest in courtroom security—specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624 (2005). But "[t]he right to be free from shackles at trial may be overcome in a particular instance by essential

1

state interests such as physical security, escape prevention, or courtroom decorum." *United States v. Van Sach*, 458 F.3d 694, 699 (7th Cir. 2006) (quotation omitted). Specifically, "under the constitutional right to a fair trial," the Court may shackle a prisoner at trial "if there is extreme need." *Lemons v. Skidmore*, 985 F.2d 354, 357-58 (7th Cir. 1993). The extreme need standard is defined "as necessary to maintain the security of the courtroom." *Id.* (citing *United States v. Amaro*, 985 F.2d 354, 358 (7th Cir. 1987)).

The Court bears the ultimate responsibility for the extreme need determination and cannot delegate its decision. *Lemons*, 985 F.2d at 358. It "must decide whether the defendant is a dangerous person prone to outbursts of violence, whether he must be restrained and, if so, what minimal restraint will appropriately protect the courtroom." *United States v. Brooks*, 125 F.3d 484, 502 (7th Cir. 1997).

To determine if extreme need is present, the "primary focus is on the prisoner's history of violence in the face of maximum security precautions." *Lemons*, 985 F.2d at 357, 358 (quotation omitted). The Court "is entitled to rely on a variety of sources including but not limited to the prisoner records, witnesses, correctional and/or law enforcement officers and the federal marshals whose statutorily defined duties include providing for the personal protection of Federal jurists, court officers, and witnesses." *Woods v. Thieret*, 5 F.3d 244, 248 (7th Cir. 1993) (citations omitted). The Court may also consider a prisoner's violent criminal history. *Id.*

If the Court determines extreme need is present to shackle a prisoner at trial, the prisoner "is entitled to the minimum restraints necessary." *Lemons*, 985 F.2d at 359. The shackles should be concealed from the jury. *Maus v. Baker*, 747 F.3d 926, 927 (7th Cir. 2014). If a prisoner is shackled at trial, courtroom security can typically be assured "by shackling the prisoner just at the ankles (skipping the handcuffs); and when that is done a curtain attached to the table at which

2

he sits will hide the shackles from the jury's sight." *Id.* "If the prisoner is to testify, then seating him in the witness box before the jury enters and removing him from the box after the jury leaves for a break or for the day will keep the jury from seeing the shackles." *Id.*

At the hearing on these motions, Mr. Dixon's counsel argued that Mr. Dixon, and by extension Mr. Bell, has an inherent right to be free from shackles at trial, consistent with the presumption that they are innocent until proven guilty. She cited *Harrell v. Israel*, 672 F.2d 632 (7th Cir. 1982), which recognized in the context of shackling that the "presumption of innocence is considered a basic component of the right to a fair trial guaranteed by the Fourteenth Amendment." But *Harrell* concluded that "a defendant's right to appear and to have his witnesses appear without restraints is not absolute." *Id.* at 635 (citing case law). In fact, *Harrell* noted that the harm to be avoided "*is not the shackling itself* but the prejudice that could result if the jury were allowed to continuously view the defendant restrained in that manner." *Id.* at 637 (emphasis added). Thus, the Court rejects the argument that Defendants cannot be shackled under any circumstances without offending the presumption that they are presumed innocent until proven guilty.

## II.
### DISCUSSION

In support of its motions, the Government relies on each Defendant's institutional disciplinary history reports from the Bureau of Prisons ("BOP"), as well as each Defendant's criminal history. [Filing No. 47-1; Filing No. 47-2; Filing No. 62-1; Filing No. 62-2.] Neither Defendant objected to the admissibility of this evidence or presented any evidence challenging the factual representations therein. Additionally, at the hearing on these motions, the Government presented testimony from United States Marshal Deputy Gregory Snyder. The Court will separately consider the evidence as to each Defendant.

3

### A. Government's Request

The Government emphasized at the hearing that it is not requesting that either Defendant's hands be restrained during the trial. Instead, the Government asks that both Defendants be restrained with modified leg irons fitted with tape and soft material to limit any audible signal to the jury that they are shackled. [Filing No. 47 at 4.]

The Government also asks that if its request is granted, the courtroom tables be fitted with table skirts to minimize prejudice so that the jury cannot see that the Defendants are restrained. [Filing No. 47 at 4.] Before the hearing on these motions, the Court skirted all tables in the courtroom, including the Government and court reporter tables, and has confirmed that modified leg irons would not be visible to the jury. Moreover, if shackled with modified leg irons, neither Defendant would be brought into or out of the courtroom in front of the jury. Should either Defendant choose to testify, he would be placed in and later removed from the witness box outside the presence of the jury.

### B. Relevant Facts as to Mr. Bell

*1) Institutional History*

Mr. Bell is incarcerated in a maximum security facility. [Filing No. 47-2 at 3.] He has an institutional history of being generally disruptive, resisting restraints, and has broken facility property. [Filing No. 47-2 at 1-16.] The BOP records show that Mr. Bell has removed or attempted to remove restraints on multiple occasions, [Filing No. 47-2 at 3; Filing No. 47-2 at 4; Filing No. 47-2 at 7; Filing No. 47-2 at 12-13], shattered a mirror in a holding cell and then flooded the cell, [Filing No. 47-2 at 1], and broken prison sprinkler heads on three occasions, [Filing No. 47-2 at 5-6; Filing No. 47-2 at 7; Filing No. 47-2 at 8]. Additionally, the records reflect that Mr. Bell assaulted facility staff members on two occasions, [Filing No. 47-2 at 7;

4

Filing No. 47-2 at 10], attempted to strike staff members with closed fists on two occasions, [Filing No. 47-2 at 12-13; Filing No. 47-2 at 16], and threatened to kill correctional officers on two occasions, [Filing No. 47-2 at 14; Filing No. 47-2 at 16]. There is no evidence that Mr. Bell has been disruptive during court proceedings; however, it is undisputed that Mr. Bell once refused to attend a court-ordered hearing.

### 2) Criminal History

Mr. Bell has been convicted of multiple offenses, but at least three prior convictions show a propensity for violence against other people—carjacking with the intent to cause death or serious bodily harm, [Filing No. 47-1 at 3], committing a terrorist act by firing two rounds of ammunition from a car at people, [Filing No. 47-1 at 8], and domestic battery, [Filing No. 47-1 at 9].

### 3) Current Charge

Mr. Bell will be tried for allegedly killing another inmate while incarcerated at the Federal Correctional Complex in Terre Haute, Indiana. [Filing No. 1 at 1.] The Government is pursuing a charge of first-degree murder under 18 U.S.C § 1111, [Filing No. 1 at 1], and Mr. Bell faces life imprisonment if found guilty.

Deputy Marshal Snyder testified at the hearing that he had reviewed Mr. Bell's institutional disciplinary records, his prior criminal history, and the pending murder charge. Deputy Marshal Snyder testified that in his opinion, Mr. Bell should remain shackled with modified leg irons during trial as a security measure.

### C. Relevant Facts as to Mr. Dixon

*1) Institutional History*

Mr. Dixon's institutional history demonstrates disruptive and violent behavior. [Filing No. 62-2 at 1-9.] The BOP records show that he has been disciplined on numerous occasions for possessing dangerous homemade weapons, including a seven-inch piece of sharpened plexiglass. [Filing No. 62-2 at 1; *see also* Filing No. 62-2 at 2; Filing No. 62-2 at 3; Filing No. 62-2 at 5; Filing No. 62-2 at 8.] Mr. Dixon has threatened bodily harm, [Filing No. 62-2 at 3], and on two occasions has engaged in sexual acts in front of female staff members, [Filing No. 62-2 at 1; Filing No. 62-2 at 9].

*2) Criminal History*

Mr. Dixon has been convicted of multiple offenses, many of which show a propensity for violence against other people, including four armed robbery convictions, [Filing No. 62-1 at 11-15], a conviction for aggravated robbery, [Filing No. 62-1 at 21], a conviction for carrying a deadly weapon, [Filing No. 62-1 at 22], and a conviction for carjacking with intent to cause harm, [Filing No. 62-1 at 22].

*3) Current Charge*

Mr. Dixon is alleged to have been an accessory after the fact to the murder of another inmate while incarcerated at the Federal Correctional Complex in Terre Haute, Indiana. [Filing No. 1 at 2.] The Government is pursuing a charge under 18 U.S.C. § 3, [Filing No. 1 at 2], and Mr. Dixon faces up to fifteen years in prison if found guilty.

Deputy Marshal Snyder testified at the hearing that he had reviewed Mr. Dixon's institutional disciplinary records, his prior criminal history, and the pending charge. Deputy

Marshal Snyder testified that in his opinion, Mr. Dixon should remain shackled with modified leg irons during trial as a security measure.

**D. Extreme Need Analysis**

The Court has separately considered each Defendant's unique circumstances to determine if he presents extreme need for the requested security measures at trial. For the reasons detailed below, the Court concludes that each Defendant presents extreme need justifying the Government's request.

*1) Mr. Bell*

With regard to Mr. Bell, the Court considers it significant that he has demonstrated disruptive and violent behavior while incarcerated in a maximum security facility. Mr. Bell's institutional history shows that on multiple occasions he has assaulted staff, attempted to hit staff, and threatened to kill staff. [*See* [Filing No. 47-2](Filing No. 47-2).] He also has destroyed prison property on numerous occasions. [*See* [Filing No. 47-2](Filing No. 47-2).] Mr. Bell has been convicted of at least three violent offenses, including carjacking with the intent to cause death or serious bodily harm, committing a terroristic act by firing two rounds of ammunition from a car at people, and domestic battery. [*See* [Filing No. 47-1](Filing No. 47-1).] This evidence shows that Mr. Bell is prone to outbursts of violence.

The Court recognizes that there is no evidence that Mr. Bell has been disruptive during previous court proceedings. Mr. Bell has, however, refused to attend a court-ordered hearing, which shows some disregard for court authority. Moreover, Mr. Bell is facing life imprisonment if found to be guilty of first-degree murder at trial.

The Court has considered the testimony of Deputy Marshal Snyder, particularly his opinion that Mr. Bell should wear modified leg irons at trial for purposes of courtroom security. Deputy Marshal Snyder's opinion alone, however, is not dispositive.

Based on the evidence presented, the Court concludes that Mr. Bell presents extreme need that justifies being restrained at trial for courtroom security. Mr. Bell is entitled to minimal restraints that will appropriately protect the courtroom at trial, [Brooks, 125 F.3d at 502](), and the shackles will be concealed from the jury, [Maus, 747 F.3d at 927](). Specifically, Mr. Bell will wear modified leg restraints fitted with tape and soft material to limit any audible noise, all tables will be skirted as they were at the hearing on these motions, and he will be transported as necessary outside the presence of the jury.

### 2) Mr. Dixon

With regard to Mr. Dixon, the Court finds material that numerous times Mr. Dixon has possessed dangerous weapons in prison, including a seven-inch piece of sharpened plexiglass. [[Filing No. 62-2]().] Mr. Dixon's disciplinary history demonstrates a general disregard for maximum security precautions, [[Filing No. 62-2]()], and his criminal history includes multiple violent crimes against people, [[Filing No. 62-1]()]. This evidence shows that Mr. Dixon is prone to outbursts of violence.

The Court recognizes that there is no evidence that Mr. Dixon has been disruptive during previous court proceedings. He is, however, facing an additional fifteen years in prison if found guilty of the pending charge against him.

The Court has considered the testimony of Deputy Marshal Snyder, particularly his opinion that Mr. Dixon should wear modified leg irons at trial for purposes of courtroom security. Deputy Marshal Snyder's opinion alone, however, is not dispositive.

Based on the evidence presented, the Court concludes that Mr. Dixon presents extreme need that justifies being restrained at trial for courtroom security.[1] He is entitled to minimal restraints that will appropriately protect the courtroom at trial, *Brooks*, 125 F.3d at 502, and the shackles will be concealed from the jury, *Maus*, 747 F.3d at 927. Specifically, Mr. Dixon will wear modified leg restraints fitted with tape and soft material to limit any audible noise, all tables will be skirted as they were at the hearing on these motions, and he will be transported as necessary outside the presence of the jury.

### E. Conclusion

For the reasons stated herein, the Court **GRANTS** the Government's Motions for Security Measures as to both Mr. Bell, [Filing No. 47], and Mr. Dixon, [Filing No. 62]. Both Defendants will wear modified leg restraints at the upcoming jury trial, all tables will be skirted as they were in the hearing on these motions, and the Defendants will be transported as necessary outside the presence of the jury.

**Distribution via ECF only:**

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Jessie A. Cook
LAW OFFICE OF JESSIE A. COOK

---

[1] Because the Court concludes that each Defendant presents his own extreme need justifying the requested restraint, the Court has not relied on the Government's parity argument that if one Defendant is shackled, the other must also be shackled.

jessieacook@icloud.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE
william.mccoskey@usdoj.gov

Matthew P. Brookman
UNITED STATES ATTORNEY'S OFFICE - EV
Matthew.Brookman@usdoj.gov